IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No.  11-cv-00241-PAB-KLM

AMERICAN PRODUCE, LLC, a limited liability company,

 Plaintiff,

v.

HARVEST SHARING, INC., d/b/a FOOD SHARING AMERICA, a Colorado corporation,
WILLIAM R. MCKNIGHT, an individual,
DIANE K. MCKNIGHT, an individual,

 Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion for Summary Judgment [Docket
No. 30] filed by defendants William R. McKnight and Diane K. McKnight.

## I.  BACKGROUND[1]

Plaintiff American Produce, LLC is a company based in Denver, Colorado that
ships and sells perishable agricultural commodities.  Defendant Harvest Sharing, Inc.
("Harvest")[2] is a "commission merchant," "dealer," and/or "broker" as those terms are
defined by the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et
seq.*, and the regulations promulgated by the U.S. Secretary of Agriculture.  *See* 7
U.S.C. §§ 499a(b)(5)-(7); 7 C.F.R. § 46.2(m).  Defendants William R. McKnight and
Diane K. McKnight are officers of Harvest.

---

[1]The following facts, unless otherwise indicated, are not in dispute.

[2]Harvest is a tax-exempt nonprofit organization under Section 501(c)(3) of the
Internal Revenue Code.

Between March 18, 2010 and April 19, 2010, plaintiff sold and shipped perishable agricultural commodities to Harvest.  Plaintiff also forwarded Harvest invoices for the shipments setting forth in detail the amounts owed for the perishable commodities.  Harvest agreed to pay plaintiff $26,170.23.  Docket No. 1 at 3, ¶ 8. Harvest now refuses to provide plaintiff with the agreed-upon payments.  *Id*. at ¶ 10.

On January 28, 2011, plaintiff filed this action against defendants Harvest, William R. McKnight, and Diane K. Mcknight.  Docket No. 1.  In its complaint, plaintiff brings claims against defendants for breach of contract and violations of the PACA statutory trust provisions.  *See* 7 U.S.C. § 499e.  In its breach of contract claim, plaintiff seeks recovery of the unpaid purchase price of perishable commodities sold to Harvest, as well as interest and attorneys' fees.  Docket No. 1 at 4, ¶ 12.  For its statutory trust claims, plaintiff seeks damages for defendants' failure to maintain trust assets, failure to account for and pay trust assets, breach of fiduciary duty, conversion of trust assets, and unlawful retention of trust assets.  *See* 7 U.S.C. § 499e.  Plaintiff argues that Harvest is liable for violating PACA's statutory trust provision as a licensed dealer of perishable agricultural commodities and that the McKnights are individually liable because they were officers or directors in control of Harvest during the relevant period. Docket No. 1 at 5-11.

On April 20, 2012, the McKnights filed a motion for summary judgment [Docket No. 30].  In their motion, the McKnights move for summary judgment on all of plaintiff's claims asserted against them in their individual capacities.  They contend that Harvest did not compensate them for the work they performed for the organization, Docket No. 30 at 2, ¶¶ 1(e)-(f), and, as a result, they qualify as "volunteers" who are immune from

2

liability pursuant to the Volunteer Protection Act of 1997 ("VPA"), 42 U.S.C. § 14501 *et seq.*, because Harvest is a nonprofit organized pursuant to Section 501(c)(3) of the Internal Revenue Code.  The McKnights argue that the VPA preempts all state and federal tort actions against volunteers performing services "within the scope of their responsibilities" for nonprofit organizations.  Docket No. 30 at 4-5, ¶¶ 4-5 (citing 42 U.S.C. § 14505(6)).  In response, plaintiff argues that defendants were not volunteers under the VPA and that, assuming defendants qualify as volunteers, the VPA does not provide immunity for violations of PACA's statutory trust provision.  *See generally* Docket No. 32.

## II.  STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  In pursuing summary judgment, the moving party generally bears the initial burden of showing the absence of a genuine dispute concerning a material fact in the case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

"Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir.1994) (citing Celotex, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. However, to be clear, "it is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

## III.  ANALYSIS

### A.   The Volunteer Protection Act

In 1997, Congress enacted the VPA to "provide certain protections from liability abuses related to volunteers serving nonprofit organizations and governmental entities."

4

42 U.S.C. § 14501(b).  Under the VPA, volunteers[3] working for nonprofit organizations[4] are immunized from liability for the harm they cause when acting within the scope of their responsibilities, unless such harm is caused by "willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer."  42 U.S.C. § 14503(a)(3). Moreover, the VPA does not immunize volunteers for misconduct that: (1) "constitutes a crime of violence (as that term is defined in section 16 of Title 18) or an act of international terrorism (as that term is defined in section 2331 of Title 18) for which the defendant has been convicted in any court"; (2) "constitutes a hate crime (as that term is used in the Hate Crime Statistics Act (28 U.S.C. 534 note))"; (3) "involves a sexual offense, as defined by applicable State law, for which the defendant has been convicted in any court"; (4) "involves misconduct for which the defendant has been found to have violated a Federal or State civil rights law"; or (5) "where the defendant was under the influence (as determined pursuant to applicable State law) of intoxicating alcohol or any drug at the time of the misconduct."  42 U.S.C. § 14503(f)(1).  The VPA

---

[3]The term "volunteer" means "an individual performing services for a nonprofit organization or a governmental entity who does not receive – (A) compensation (other than reasonable reimbursement or allowance for expenses actually incurred); or (B) any other thing of value in lieu of compensation, in excess of $500 per year, and such term includes a volunteer serving as a director, officer, trustee, or direct service volunteer." 42 U.S.C. § 14505(6).

[4]Under the VPA, the term "nonprofit organization" includes "any organization which is described in section 501(c)(3) of such title and exempt from tax under section 501(a) of Title 26."  42 U.S.C. § 14505(4)(A).

"preempts the laws of any State[5] to the extent that such laws are inconsistent with [the VPA], except that [the VPA] shall not preempt any State law that provides additional protection from liability relating to volunteers or to any category of volunteers in the performance of services for a nonprofit organization or governmental entity."  42 U.S.C. § 14502(a).

## B.   Effect of VPA on Federal Causes of Action

The McKnights claim that the VPA immunizes them from liability for plaintiff's cause of action pursuant to PACA.

In construing a statute, it is a court's primary task "to determine congressional intent, using traditional tools of statutory construction."  *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008) (internal quotation marks and citations omitted).  In ascertaining such congressional intent, courts "begin by examining the statute's plain language," and "[i]f the statutory language is clear, [the] analysis ordinarily ends."  *Id*.  In addition, "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  *Cuba Soil & Water Conservation Dist. v. Lewis*, 527 F.3d 1061, 1065 (10th Cir. 2008) (internal quotation marks and citation omitted).  "If the statute's plain language is ambiguous as to Congressional intent, [courts may] look to the legislative history and the underlying public policy of the statute."  *Manning*, 526 F.3d at 614

---

[5]The term "State" means "each of the several States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, any other territory or possession of the United States, or any political subdivision of any such State, territory, or possession."  42 U.S.C. § 14505(5).

(internal quotation marks and citation omitted).  With these principles in mind, the Court turns to the language of the VPA.

By its plain terms, the VPA explicitly preempts any state law that provides volunteers with insufficient protection against lawsuits or is inconsistent with the provisions of the VPA.  *See* 42 U.S.C. § 14502(a).  Moreover, despite the fact that federal liability for volunteers would seem to undercut the stated goals of encouraging volunteerism, nothing in the language of the VPA expresses an intent to exempt volunteers from federal liability.  As noted by the Second Circuit in *U.S. v. Gen. Dynamics Corp.*, 19 F.3d 770, 774 (2d Cir. 1994), "well established jurisprudence" "strongly disfavors preemption of federal statutory law by another federal statute absent express manifestations of preemptive intent."  *Id.*; *see also United States v. Vasquez-Alvarez*, 176 F.3d 1294, 1297 (10th Cir. 1999) (citing *Gade v. Nat'l Solid Waste Mgmt. Ass'n*, 505 U.S. 88, 104-05 (1992), for proposition that courts should be hesitant to find express preemption from 'negative implications' of a statute's text); *Covalt v. Carey Canada, Inc.*, 860 F.2d 1434, 1439 (7th Cir. 1988) (court reluctant to attribute to Congress an intent to preclude other federal laws).  Based on the plain language of the statute, volunteer immunity extends only to suits brought against volunteers pursuant to state law.

To the extent Congress' silence regarding volunteer immunity from federal laws could be said to create an ambiguity in the statute, the legislative history supports the conclusion that Congress only intended to immunize volunteers from state law claims. The background section of the legislative report from the House of Representatives

7

reveals that the purpose of enacting the VPA was to create a "uniform national standard[] governing volunteer liability" because, "[a]lthough every state . . . has a law pertaining" to the liability of volunteers, the "hodgepodge of State laws" does not provide volunteers with enough protection.  H.R. Rep. No. 105-101(I), 1997 WL 266605, at *6-8 (May 19, 1997).  The report from the Congressional Budget Office found that "the costs resulting from . . . preemption of state laws would be minimal" because liability against volunteers is uncommon.  *Id*. at *13.  The House report does not refer to federal laws and the Congressional Budget Office does not mention a cost associated with overriding federal causes of action.  The debate in the Senate shows that senators were troubled with the VPA's preemption of state tort law.  *See* 143 Cong. Rec. S4915-05, 1997 WL 268010, at *S4917 (1997) ("Many States have already acted on this issue with at least 44 States having passed some protection for volunteers.  If we can achieve the shared objective of protecting individual volunteers without preempting State tort law, I think we should be pursuing that route.  That approach, however, was not acceptable to the majority.") (Senator Leahy).  There is no reference to the preemption of federal causes of action.  Based on the language and the legislative history of the VPA, considered as a whole, the Court finds that the VPA only immunizes volunteers from liability arising from state law.  Nothing in the VPA or the legislative history indicates that, by enacting the VPA, Congress intended to immunize volunteers from claims brought pursuant to federal law.

The McKnights rely on *Armendarez v. Glendale Youth Center, Inc.*, 265 F. Supp. 2d 1136, 1139 (D. Ariz. 2003), for the proposition that the VPA immunizes volunteers from federal law claims.  In that case, the court found that the VPA not only preempted

state law, but also precluded recovery from volunteers in cases brought under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  *Id*.  The court found that,

because the "federal laws listed as exceptions [to the VPA in § 14503(f)] d[id] *not*

include the FLSA," it could not "imply that the FLSA is an exception the VPA's

limitations on liability."  *Id*. at 1141 (emphasis in original).  The court also relied on the

fact that the legislative history did not "distinguish between federal and state liability"

and sometimes mentioned "all civil lawsuits."  *Id*. at 1140.

The Court disagrees with the conclusion reached in *Armendarez*.  The Court

does not interpret the reference to various federal statutes in 42 U.S.C. § 14503(f) as

an indication that Congress intended to immunize volunteers from federal law.  The

subsection states as follows:

(f) Exceptions to limitations on liability

(1) In general

The limitations on the liability of a volunteer under this chapter shall not
apply to any misconduct that –

(A) constitutes a crime of violence (as that term is defined in section 16 of
Title 18) or act of international terrorism (as that term is defined in section
2331 of Title 18) for which the defendant has been convicted in any court;

(B) constitutes a hate crime (as that term is used in the Hate Crime
Statistics Act (28 U.S.C. 534 note));

(C) involves a sexual offense, as defined by applicable State law, for
which the defendant has been convicted in any court;

(D) involves misconduct for which the defendant has been found to have
violated a Federal or State civil rights law; or

(E) where the defendant was under the influence (as determined pursuant
to applicable State law) of intoxicating alcohol or any drug at the time of
the misconduct.

42 U.S.C. § 14503(f)(1).  The referenced federal statutes are merely definitional.

Section 16 of Title 18 defines the term "crime of violence"; section 2331 of Title 18 is a

definitional section to the Antiterrorism Act of 1990 that contains a definition of

"international terrorism"; and section 534 of Title 28 (note)[6] identifies a list of crimes

motivated by bias or prejudice.  If a state criminal statute uses a definition that overlaps

with one of these definitions, that crime would not be preempted by the VPA.

Subsection 14503(f)(1) goes no further than that.  Had Congress wished to exempt

certain federal laws that may impose liability on volunteers from preemption, Congress

presumably would have listed those statutes.  The federal statutes listed in § 14503(f)

are not such references.  Moreover, the reference in § 14503(f)(1)(D) to federal civil

rights law is not an exemption of such federal laws from the scope of the VPA, but

instead is an indication that, if a volunteer is found to have violated federal or state civil

rights law, there is no immunity.[7]

### C.   Effect of VPA on Plaintiff's PACA Claims

With regard to plaintiff's statutory trust claims, there is no dispute that these

claims arise out of federal law.  Congress enacted PACA in 1930 to deter unfair

business practices and promote financial responsibility in the perishable agricultural

goods market.  *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 419-20 (3d Cir. 2005).

---

[6]The Hate Crimes Statistics Act of 1990, Pub. L. 101-275, 104 Stat. 140 (codified at 28 U.S.C. § 534 (note)), directs the Attorney General to collect, compile, and publish data on the rate of hate crimes, as that term is defined in the Act, committed over the course of a specified time period.  The Hate Crimes Statistics Act does not create a right of action.

[7]Similarly, 42 U.S.C. § 14503(e) does not purport to preclude the applicability of federal law, but only to limit the availability of punitive damages.

"The Act was 'designed primarily for the protection of the producers of perishable agricultural products-most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing.'" *Id.* (quoting *Tom Lange Co. v. Kornblum & Co.*, 81 F.3d 280, 283 (2d Cir. 1996)).  In 1984, PACA was amended to allow for a non-segregated floating trust for the protection of producers and growers. *See* 7 U.S.C. § 499e(c).  Section 499e(c)(2) states that perishable agricultural commodities received by a commission merchant, dealer, or broker shall be "in trust for the benefit of all unpaid suppliers or sellers of such commodities" until full payment of the sums owing in connection with these transactions has been received.  7 U.S.C. § 499e(c)(2).

Courts interpreting the PACA trust provisions have concluded that "PACA liability attaches first to the licensed seller of perishable agricultural commodities.  If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997).  Under this theory of liability, courts in several circuits have found that an individual may be held personally liable based upon common law trust principles.  *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 167 (3d Cir. 2010).  Thus, "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their duty to preserve those assets, may be held personally liable under the Act." *Weis-Buy*, 411 F.3d at 421 (citation omitted); *Sunkist*, 104 F.3d at 283; *Goldman-*

11

*Hayden Co. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir. 2000) (same);

*Coosemans Specialities, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007) (same).

Under PACA, individual liability is not derived from the statutory language, but from

common law breach of trust principles.  *Bear Mountain*, 623 F.3d at 167.  Liability arises

against the trustee of a trust if he fails to "exercise such care and skill as a man of

ordinary prudence would exercise in dealing with his own property" when administering

the trust.  *Weis-Buy*, 411 F.3d at 421.  Although a fiduciary duty relies upon common

law principles, a cause of action under PACA arises under federal law.  *Id*.

Because the VPA does not immunize defendants from claims brought pursuant

to federal law, the McKnights are not entitled to immunity from plaintiff's claims.  The

McKnights do not raise any other defenses to plaintiff's PACA claims in their motion.

Accordingly, the Court finds that the McKnights are not entitled to summary judgment

on plaintiff's PACA claims.

## IV.  CONCLUSION

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment with respect to Defendants

William R. McKnight and Diane K. McKnight [Docket No. 30] is **DENIED**.

DATED March 20, 2013.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge