IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00241-PAB-KLM

AMERICAN PRODUCE, LLC, a limited liability company,

    Plaintiff,

v.

HARVEST SHARING, INC., d/b/a FOOD SHARING AMERICA, a Colorado corporation,
WILLIAM R. MCKNIGHT, an individual,
DIANE K. MCKNIGHT, an individual,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion for Summary Judgment [Docket No. 31] filed by plaintiff American Produce, LLC. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**

Plaintiff is a company based in Denver, Colorado that ships and sells perishable agricultural commodities. Defendant Harvest Sharing, Inc. ("Harvest")[1] is a commission merchant as that term is defined by the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, and the regulations promulgated by the U.S. Secretary of Agriculture. *See* 7 U.S.C. §§ 499a(b)(5)-(7); 7 C.F.R. § 46.2(m). Harvest

---

[1]On January 20, 2011, Harvest filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado. *See* Docket No. 7.

functioned as a commission merchant pursuant to a license issued by the Secretary of Agriculture.[2]  *See* Docket No. 27 at 3, ¶ 4(b).

During the relevant period, William R. McKnight was a member and president of Harvest's board of directors.  Docket No. 31-2 at 7.  Pursuant to the bylaws of Harvest, Mr. McKnight was also the Manager of the Corporation, Chief Executive Officer ("CEO"), and Executive Director.  Docket No. 36-3 at 6.  As the president of the board of directors, Mr. McKnight was responsible in whole or in part for the financial management of Harvest.  *Id*. at 7.  In addition, Mr. McKnight had the authority as president of the board of directors to issue checks on behalf of Harvest, to dispose of, transfer, and pay out Harvest's assets, and to bind Harvest to contractual obligations.  Docket No. 31-2 at 7-10; Docket No. 36-3 at 5-10 (Harvest bylaws).  The parties, however, dispute whether Mr. McKnight was in a position to control Harvest's PACA statutory trust assets, Harvest's accounts receivable, and Harvest's ability to pay suppliers.  Docket No. 31-2 at 7-10.  Mr. McKnight claims that those responsibilities were performed by a volunteer accountant.  *Id*. at 10.

The parties dispute whether Diane McKnight was an officer of Harvest during the relevant period.  Docket No. 31 at 4; Docket No. 34 at 3-4; Docket No. 31-3 at 7-8.  Ms. McKnight had the authority to issue checks on behalf of the company and she once signed a credit application on behalf of Harvest.  *Id*. at 8.

---

[2]The Secretary of Agriculture may issue licenses to commission merchants, dealers, or brokers which entitles "the licensee to do business as a commission merchant and/or dealer and/or broker unless and until it is suspended or revoked by the Secretary in accordance with the provisions of this chapter."  7 U.S.C. § 499d(a).

Between March 18, 2010 and April 19, 2010, plaintiff sold and shipped perishable agricultural commodities to Harvest.[3]  Docket No. 31-1 at 3, ¶ 7.  Plaintiff forwarded Harvest invoices for the shipments setting forth the amounts owed.  *Id*. at 9-12.  All invoices plaintiff sent to Harvest included the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

*See id.*  The parties agreed that the shipments would travel from California to Colorado through interstate commerce.  *Id*. at 4, ¶ 10.  Plaintiff claims that Harvest received and accepted the commodities without objection.  *Id*.  The McKnights disclaim any knowledge of these issues.  *See* Docket No. 31-2 at 12; Docket No. 31-3 at 12.  Plaintiff states that Harvest agreed to pay $26,170.23 for the shipments, Docket No. 31-1 at 3, ¶ 7, and that Harvest has not provided the agreed-upon payments.  *Id*. at ¶ 8.

On January 28, 2011, plaintiff filed this action against Harvest and the McKnights.  Docket No. 1.  In its complaint, plaintiff brings claims against defendants for breach of contract and violations of PACA's statutory trust provisions.  *See* 7 U.S.C. § 499e.  In its breach of contract claim, plaintiff seeks recovery of the unpaid purchase price of perishable commodities sold to Harvest, as well as interest and attorneys' fees.  Docket No. 1 at 4, ¶ 12.  For its statutory trust claims, plaintiff seeks damages for defendants' failure to maintain trust assets, failure to account for and pay trust assets,

---

[3]Plaintiff sells commodities pursuant to a PACA license issued by the Secretary of Agriculture.  Docket No. 31-1 at 7.

breach of fiduciary duty, conversion of trust assets, and unlawful retention of trust assets. *See* 7 U.S.C. § 499e. Plaintiff argues that the McKnights are individually liable for violating PACA's statutory trust provisions because they were officers or directors in control of Harvest's PACA trust assets. Docket No. 1 at 5-11. Plaintiff seeks summary judgment [Docket No. 31], requesting that the Court enter judgment in its favor and against Harvest[4] and the McKnights on its claims for breach of PACA's statutory trust provisions.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

---

[4]On February 24, 2011, the Court stayed all proceedings against Harvest pursuant to Section 362(a) of the Bankruptcy Code. *See* Docket No. 8. Accordingly, the Court will not address plaintiff's summary judgment motion as to Harvest.

### III. ANALYSIS

#### A. Perishable Agricultural Commodities Act

Congress enacted PACA in 1930 to deter unfair business practices and promote financial responsibility in the perishable agricultural goods market. *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 419-20 (3d Cir. 2005). "The Act was 'designed primarily for the protection of the producers of perishable agricultural products-most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing.'" *Id*. (quoting *Tom Lange Co. v. Kornblum & Co.*, 81 F.3d 280, 283 (2d Cir. 1996)). In 1984, PACA was amended to allow for a non-segregated floating trust for the protection of producers and growers. *See* 7 U.S.C. § 499e(c).

PACA's statutory trust provisions require commission merchants, dealers, or brokers to hold perishable agricultural commodities, receivables, and proceeds from the sale of those commodities in trust for the benefit of the unpaid sellers until full payment of the sums owed has been made. 7 U.S.C. § 499e(c)(2). PACA's statutory trust is a non-segregated floating trust that allows a merchant or dealer to commingle all of its assets without defeating the priority of the beneficiaries of the trust. 7 C.F.R. § 46.46(b); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 136 (3d Cir. 2000); *In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2d Cir. 1996). Under PACA, dealers must maintain the statutory trust in such a manner that assets are freely available to satisfy outstanding obligations to sellers and failure to maintain the trust,

including dissipation of assets,[5] is unlawful.  See 7 U.S.C. § 499b(4); 7 C.F.R. § 46.46(d)(1).  District courts have jurisdiction over "actions by trust beneficiaries to enforce payment from the trust."  7 U.S.C. § 499e(c)(5).

To establish a claim for breach of PACA's statutory trust provisions, plaintiff must establish: (1) the produce shipped were "perishable agricultural commodities"; (2) the commission merchant received the produce; (3) the transaction occurred in contemplation of interstate commerce; (4) the purchaser failed to pay for the produce; and (5) the seller preserved its rights under the trust by giving proper notice to the buyer.  7 U.S.C. §§ 499e(c)(3), (4); see also Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 284 (9th Cir. 1997).  Here, there is no dispute that plaintiff shipped perishable agricultural commodities[6]; Harvest qualified as a commission merchant; the goods were shipped in contemplation of interstate commerce[7]; plaintiff preserved its rights by giving notice to Harvest[8]; and Harvest did not pay for the shipments.

Only the second element – whether Harvest received the produce – is at issue.  Plaintiff stated as an undisputed fact in its summary judgment motion that "[a]ll subject

---

[5]Dissipation means any act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid sellers or suppliers to recover money owed in connection with produce transactions.  7 C.F.R. § 46.46(a)(2).

[6]See Docket No. 31-1 at 9-12.

[7]A transaction implicates interstate commerce if a commodity is sent from one state with the expectation that it will end up in another state.  7 U.S.C. § 499a(b)(8).

[8]Notice may be provided in one of two forms: (1) written notice within thirty calendar days after payment was due, 7 U.S.C. § 499e(c)(3) (the written payment method), or (2) a printed statement on its regular invoices, 7 U.S.C. § 499e(c)(4) (the invoice method).  Plaintiff's invoices contained the statutory language required by 7 U.S.C. § 499e(c)(4).  See Docket No. 31-1 at 9-12.

commodities were received and accepted by Defendants without objection." Docket No. 31 at 2, ¶ 7. In response, the McKnights stated that, "[b]ecause the parties involved in the receipt of goods from Plaintiff are not all available, Defendants have been unable to determine the validity of Plaintiff's claims, and whether the produce was ever received by Harvest Sharing." Docket No. 34 at 2, ¶ 7. This vague response is not sufficient to create a genuine issue of material fact. Nor do the McKnights explain why they do not have access to the information that would confirm or deny the assertion. In essence, the McKnights simply deny any knowledge. Plaintiff, however, has attached invoices that establish that it delivered, and Harvest received, perishable commodities on March 18, 2010, March 22, 2010, and April 19, 2010. Docket No. 31-2 at 9-12; Docket No. 36-1 at 6-13. The confirmation invoices indicate that two shipments were signed for by "Shelley," Docket No. 36-1 at 7 (Invoice No. 203814); *id*. at 11 (Invoice No. 201732), and that two shipments were signed by "Breanne." *Id.* at 9 (Invoice No. 201539); *id*. at 13 (Invoice No. 203894). The combined total of these invoices is $26,170.23. In addition, Harvest identifies plaintiff as one of its creditors in the amount of $26,107.00 in two Schedule F bankruptcy forms Harvest filed with its Chapter 11[9] and Chapter 7 bankruptcy petitions.[10] These forms establish that Harvest received

---

[9]On July 7, 2010, Harvest filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado. *See In re Harvest Sharing, Inc.*, 10-26913-MER (Bankr. D. Colo. 2010). On August 2, 2010, Harvest's petition was dismissed for failure to retain counsel. *See In re Harvest Sharing, Inc.*, 10-26913-MER (Bankr. D. Colo. 2010) [Docket No. 26]. As noted above, it filed under Chapter 7 on January 20, 2011.

[10]There is a discrepancy of approximately $70 between plaintiff's invoices and the amount identified in Harvest's Schedule F forms. *Compare* Docket No. 36-1 at 6-13*, with* Docket Nos. 36-4 at 3 and 36-7 at 2. Given that Harvest's Schedule F form

plaintiff's shipments between March 18, 2010 and April 19, 2010.  *See* Docket No. 36-4 at 3; Docket No. 36-7 at 2.

Viewing the evidence in a light most favorable to the McKnights, the Court finds that plaintiff's invoices are sufficient to establish that Harvest actually received the shipments.  *Faustin*, 423 F.3d at 1198.  Moreover, Harvest's admissions in the Schedule F forms are sufficient by themselves to establish that Harvest received plaintiff's shipments.  Accordingly, plaintiff has satisfied all of the elements necessary to establish a breach of PACA's statutory trust provisions for failure to maintain trust assets.  7 U.S.C. § 499e(c)(2).  Because the Court will not consider plaintiff's summary judgment against Harvest due to the automatic stay, the Court next addresses whether the McKnights are individually liable for the failure to maintain trust assets.

**B.   Individual Liability**

Plaintiff argues that the McKnights are secondarily liable for Harvest's failure to maintain sufficient PACA trust assets because they were officers and directors in control of the PACA trust assets.  Docket No. 31 at 9.  Specifically, plaintiff claims that Mr. McKnight is personally liable for the breach because he was president of Harvest's board of directors and CEO and participated in the day-to-day management of the company.  *Id*. at 12.  Plaintiff also contends that Ms. McKnight is personally liable because she was a director of the company with the authority to endorse checks on behalf of the company.  *Id*. at 13.

---

indicates its liability to plaintiff accrued on March 18, 2010, Docket No. 36-4 at 3, the $70 difference does not diminish the evidentiary value of the bankruptcy forms.

Several circuits have recognized that an individual may be secondarily liable for a breach of PACA's statutory trust provisions under certain circumstances. *See, e.g., Sunkist Growers*, 104 F.3d at 283; *accord Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 171 (3d Cir. 2010); *Golman-Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000); *Coosemans Specialities, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007). Because PACA does not create a cause of action against an individual, individual liability is based upon "common law breach of trust principles." *Weis-Buy Servs.*, 411 F.3d at 421. Pursuant to these trust principles, "individual shareholders, officers, or directors *who are in a position to control trust assets*, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA." *Bear Mountain*, 623 F.3d at 171 (emphasis in original); *accord Golman-Hayden*, 217 F.3d at 351; *Coosemans Specialities*, 485 F.3d at 705; *Sunkist Growers*, 104 F.3d at 283. In *Bear Mountain*, the Third Circuit rejected a bright-line application of the position-of-control test, noting that an individual's formal title was not dispositive of actual control over PACA trust assets. 623 F.3d at 171-72. Instead, the Third Circuit held that the analysis should focus on contextual factors and developed a two-part test, which calls on courts to 1) "determine whether an individual holds a position that suggests a possible fiduciary duty to preserve the PACA trust assets," and (2) "assess whether that individual's involvement with the corporation establishes that [he] was *actually* able to control the PACA trust assets." *Id*. (emphasis in original); *see also Sato & Co., LLC v. S & M Produce, Inc.*, 859 F. Supp. 2d 923, 927-28 (N.D. Ill. 2012) (noting that courts determine individual liability by considering

9

whether the individual (1) had a role in causing the breach, (2) controlled day-to-day operations of the company, (3) signed for company accounts, and (4) was the primary actor in failing to pay under PACA). The Third Circuit noted that an individual's "ability to control" trust assets is the determinative factor of this two-part test. *Bear Mountain*, 623 F.3d at 172. With these principles in mind, the Court addresses the claims against Mr. McKnight and Ms. McKnight separately.

In applying the position-of-control test, the Court finds that Mr. McKnight's actual ability to control PACA trust assets remains in dispute. In his responses to plaintiff's requests for admission, Mr. McKnight denied that he was obligated to ensure that Harvest held and preserved trust assets under PACA for plaintiff's benefit, instead claiming that such responsibility was "assigned to the volunteer accountant." Docket No. 31-2 at 10. Plaintiff presents no evidence to contradict that statement. *See, e.g., Weis-Buy Farms, Inc. v. Quality Sales LLC*, 2012 WL 280617, at *14 (D. Conn. Jan. 31, 2012) (plaintiff not entitled to a preliminary injunction because it did not establish individual liability under PACA; although executive vice president of company was involved in the purchase of produce and had authority over the operating account, he was not in a position to oversee preservation of trust assets); *Bear Mountain*, 623 F.3d at 167-68 (noting that personal liability is premised on the idea that a defendant oversaw the misuse or misappropriation of money derived from the sale of produce). Therefore, the Court finds that there remain genuine disputes of material facts and plaintiff is not entitled to summary judgment on its claim against Mr. McKnight for breach of PACA's statutory trust provisions.

With regard to Ms. McKnight, the Court finds that there is a genuine dispute about whether she was an officer of Harvest. See Docket No. 31-1 at 14. However, Ms. McKnight's formal position is not dispositive. See Bear Mountain, 623 F.3d at 169-72. Although Ms. McKnight could issue checks on behalf of the company, plaintiff has not submitted evidence that she actually wrote any checks. Id. at 174 (finding that the ability to sign checks on behalf of the company was insufficient to show that defendant had control of PACA trust assets). It is undisputed that Ms. McKnight was not a member of the board of directors, she did not manage the day-to-day operations of the company, and she did not have the authority to bind the company legally. Moreover, the record is devoid of any evidence regarding Ms. McKnight's daily duties, whether she sold or purchased produce, collected receivables, or negotiated contracts with clients. Accordingly, the Court finds that there remain genuine disputes of material facts and plaintiff is not entitled to summary judgment on its claim against Ms. McKnight for breach of PACA's statutory trust provisions.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment against Defendants [Docket No. 31] is **DENIED**.

DATED March 27, 2013.

             BY THE COURT:

              s/Philip A. Brimmer
             PHILIP A. BRIMMER
             United States District Judge